# United States Court of Appeals for the Federal Circuit

2008-1284, -1340

CROWN PACKAGING TECHNOLOGY, INC.
and CROWN CORK & SEAL USA, INC.,

Plaintiffs-Appellants,

v.

REXAM BEVERAGE CAN CO.,

Defendant-Cross Appellant.

Dale M. Heist, Woodcock Washburn LLP, of Philadelphia, Pennsylvania, argued for plaintiffs-appellants. With him on the brief were Lynn A. Malinoski, Chad E. Ziegler, Aleksander J. Goranin, and Aaron B. Rabinowitz.

George P. McAndrews, McAndrews, Held & Malloy Ltd., of Chicago, Illinois, argued for defendant-cross appellant. With him on the brief were Steven J. Hampton, Gerald C. Willis, Jr., Paul W. McAndrews, Heather Ann Bjella, Sarah Anne Kofflin, and Patrick V. Bradley.

Appealed from: United States District Court for the District of Delaware

Magistrate Judge Mary Pat Thynge

# United States Court of Appeals for the Federal Circuit

2008-1284, -1340

CROWN PACKAGING TECHNOLOGY, INC.
and CROWN CORK & SEAL USA, INC.,

Plaintiffs-Appellants,

v.

REXAM BEVERAGE CAN CO.,

Defendant-Cross Appellant.

Appeals from the United States District Court for the District of Delaware in case no. 05-CV-608, Magistrate Judge Mary Pat Thynge.

_____

DECIDED: March 17, 2009

_____

Before BRYSON, GAJARSA, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Crown Packaging Technology Inc. and Crown Cork & Seal USA, Inc. (collectively, Crown) appeal from a decision of the United States District Court for the District of Delaware granting Rexam Beverage Can's (Rexam) motion for summary judgment of noninfringement of claim 14 of U.S. Patent No. 6,935,826 (the '826 patent). See Crown Packaging Tech., Inc. v. Rexam Beverage Can Co., 531 F. Supp. 2d 629 (D. Del. 2008) (Crown II). Rexam cross-appeals the prior grant of Crown's motion for summary judgment dismissing Rexam's counterclaim for infringement of U.S. Patent No. 4,774,839 (the '839 patent). See Crown Packaging Tech., Inc. v. Rexam Beverage

<u>Can Co.</u>, 498 F. Supp. 2d 718 (D. Del. 2007) (<u>Crown I</u>). Because we conclude that there is a material issue of fact regarding the function of the "annular reinforcing bead" of claim 14 of the '826 patent, we reverse and remand the district court's grant of summary judgment of noninfringement. Additionally, because we are bound by our holding in <u>Hanson v. Alpine Valley Ski Area, Inc.</u>, 718 F.2d 1075 (Fed. Cir. 1983)—that the marking requirement of 35 U.S.C. § 287(a) does not apply when only method claims are asserted—we reverse the district court's grant of summary judgment dismissing Rexam's counterclaim based on a failure to mark.

BACKGROUND

Crown and Rexam are both in the business of selling can ends and bodies to fillers[1] associated with major beverage companies. Crown asserts that the Crown "Superend" can end revolutionized the low-margin beverage can market because the Superend uses up to ten percent less metal than a conventional can end.[2] Following the introduction of the Superend, Rexam designed its own can end, the Rexam End, to compete with the Superend.

Crown filed this action on August 18, 2005, alleging that the Rexam End infringes claim 14 of the '826 patent. Rexam answered and filed counterclaims on November 3,

---

[1] Fillers are companies that fill cans with fluids such as soda or beer. Generally, beverage cans are sold to fillers in two parts, can bodies and can ends. The can bodies are the cylindrical-shaped portions that hold the beverages and the can ends are the can tops. Fillers first fill the can bodies with the desired beverage, and then seal the can ends to the can bodies. The method used to seal the can ends to the can bodies depends, in part, on the geometry of the can ends.

[2] Crown indicates that their Superends are commercial embodiments of the '826 patent, and that they account for 18.2 billion of the 21.5 billion can tops manufactured each year in the United States.

2005.[3] Crown moved for partial summary judgment dismissing Rexam's counterclaim based on a failure to mark under 35 U.S.C. § 287(a). The district court issued an amended order on July 30, 2007 granting Crown's motion for summary judgment and dismissing Rexam's counterclaim. Following additional briefing and oral arguments, the district court issued a claim construction order on May 17, 2007. On January 22, 2008, the district court granted Rexam's motion for summary judgment of noninfringement, holding that no genuine issue of material fact existed as to whether the Rexam End infringes claim 14 of the '826 patent under the doctrine of equivalents. A final judgment and order to this effect issued on March 31, 2008. Crown timely appealed.[4]

## DISCUSSION

Predicate to addressing the merits of any case appealed to this court, the court must be satisfied jurisdiction exists. We raised the issue of jurisdiction with the parties during oral argument and invited supplemental briefing. In a single letter brief, both parties argue in favor of the court's jurisdiction. The district court issued an amended order on July 30, 2007 granting Crown's motion to dismiss Rexam's counterclaim based on a failure to mark. On March 31, 2008, the district court issued a final judgment resolving all of the remaining claims and counterclaims. This final judgment did not mention the earlier dismissal of Rexam's counterclaim I. Because our jurisdiction is limited to appeals from final judgments of the district courts, 28 U.S.C. § 1295(a)(1), "we are obligated to consider whether there is a final judgment." Pandrol USA, LP v.

---

[3] Rexam filed three counterclaims: I, II, and III. This cross-appeal concerns only counterclaim I.

[4] Crown does not appeal the district court's concurrent grant of Rexam's motion for summary judgment of noninfringement of claim 14 with regard to literal infringement.

Airboss Ry. Prods., Inc., 320 F.3d 1354, 1362 (Fed. Cir. 2003). The Supreme Court defined a final judgment as "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233 (1945).

Here, there is no question that the final judgment document entered by the district court ended the litigation on the merits—a decision had been rendered as to every claim; no claim remained outstanding. In this critical way, the present case is distinct from iLOR, LLC v. Google, Inc., 550 F.3d 1067 (Fed. Cir. 2008), and SafeTCare Manufacturing, Inc. v. Tele-Made, Inc., 497 F.3d 1262 (Fed. Cir. 2007), in which the district court entered a final judgment without disposing of all of the pending claims. See iLOR, 550 F.3d at 1071–72; SafeTCare, 497 F.3d at 1266. Moreover, this court has recognized that an earlier, non-appealable order may be considered to be "merged" into a subsequent final judgment. See Glaros v. H.H. Robertson Co., 797 F.2d 1564, 1573 (Fed. Cir. 1986). Even so, there must be a "clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as it is concerned, is the end of the case." Pandrol USA, 320 F.3d at 1362–63. We agree with the parties that the district court clearly intended the March 31, 2008 final judgment to resolve and dispose of all the claims and counterclaims in this action. "Were we to send this portion of the case back to the district court for the entry of an amended judgment, little more than delay and waste of judicial resources would be accomplished, in direct contravention of the rationale of Bankers Trust." Id. at 1378. Accordingly, we have jurisdiction under 28 U.S.C. § 1295. Having satisfied ourselves as to our jurisdiction, we now turn to the merits.

I. Claim 14 of the '826 patent—the doctrine of equivalents

We review a district court's grant of summary judgment de novo. Hilgraeve Corp. v. McAfee Assocs., Inc., 224 F.3d 1349, 1352 (Fed. Cir. 2000). Summary judgment is proper only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Furthermore, a determination of noninfringement, either literal or under the doctrine of equivalents, is a question of fact. IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1429 (Fed. Cir. 2000). "Thus, on appeal from a grant of summary judgment of noninfringement, we must determine whether, after resolving reasonable factual inferences in favor of the patentee, the district court correctly concluded that no reasonable jury could find infringement." Id.

A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product was insubstantial. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608 (1950). One way of doing so is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product. See Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 39–40 (1997). The function-way-result test is particularly suitable for analyzing the equivalence of mechanical devices, such as the ones at issue here. Id. at 39.

Crown's appeal focuses on the "annular reinforcing bead" element of claim 14 of the '826 patent. Claim 14 depends from independent claim 13.[5] The claims recite:

> 13. A metal can end for use in packaging beverages under pressure and adapted to be joined to a can body by a seaming process so as to form a double seam therewith using a rotatable chuck comprising first and second circumferentially extending walls, said first and second chuck walls forming a juncture there between, said can end comprising;
> a peripheral cover hook, said peripheral cover hook comprising a seaming panel adapted to be formed into a portion of said double seam during said seaming operation;
> a central panel;
> a wall extending inwardly and downwardly from said cover hook, a first portion of said wall extending from said cover hook to a first point on said wall, said first wall portion adapted to be deformed during said seaming operation so as to be bent upwardly around said juncture of said chuck walls at said first point on said wall, a second portion of said wall extending from said first point to a second point forming a lowermost end of said wall, a line extending between said first and second points being inclined to an axis perpendicular to said central panel at an angle of between 30° and 60°.

> 14. The end according to claim 13, further comprising <u>an annular reinforcing bead</u>[6] connected to said wall at said second point, said annular reinforcing bead connecting said wall to said central panel.

Figure 4 of the '826 patent shows an embodiment of the can top according to the invention.[7]

---

[5]     Crown originally asserted both claims, but withdrew its assertion of infringement with regard to claim 13 and provided a covenant not to sue.

[6]     While claim 14 recites an annular reinforcing bead, the parties use the terms "annular bead" and "anti-peaking bead" interchangeably to refer to this element of the claim.

[7]     The enlarged view of the annular bead 25 is provided for clarity and is not included in figure 4 of the patent.



Fig.4.

The anti-peaking bead of figure 4—which appears as a groove covering the outer circumference of the can top—is identified by reference numeral 25. Once a can body is filled, a can top is placed on top of the body, where it is secured in place. The can top is then sealed—or seamed—to the can body as shown in figures 6 and 7:



Fig.6.

Fig.7.

After the can top is secured in place, a first operation roll is used to deform the outside of the can, sandwiching the edges of the can end and the can body together. Following this operation, a second operation roll is used to again deform the can such that it forms a secure seal. The Rexam End accused of infringement is shown below:



Crown asserts that the "fold" of the Rexam end—shown in the enlarged view—is the equivalent of the annular bead of claim 14.

With regard to the grant of summary judgment of noninfringement under the doctrine of equivalents in this case, the parties dispute only one issue—whether there is a material issue of fact regarding the function(s) of the "annular reinforcing bead" element of claim 14 of the '826 patent. Crown's expert, Mr. Martin Higham, opined that the Rexam end infringed claim 14 under the doctrine of equivalents and performed a detailed analysis under the function-way-result test. Mr. Higham further opined that "[t]he function of the annular reinforcing bead of the claims is to increase the pressure resistance of a sealed-on can end," and that "[t]he function of the fold of the Rexam end is identical to the function of the annular reinforcing bead in the [patent]." Once Mr. Higham determined that the fold of the Rexam end performed the same function as the annular reinforcing bead of claim 14, he went on to analyze the way and result prongs of the test.[8] Based on his analysis, Mr. Higham concluded that "the Rexam end is not substantially different from its corresponding elements in the ['826 patent]."

---

[8]   We do not address the merits of the way or result prongs because the parties failed to raise them below with respect to the motion for summary judgment which is before us.

Rexam submitted its own expert report by Edmund Gillest. In responding to the analysis and conclusion in Mr. Higham's expert report, Mr. Gillest conceded that:

> Mr. Higham says that the function of the conventional anti-peaking bead is to increase the pressure resistance of a seamed-on can end and that the result of the conventional anti-peaking bead performing that function would be to decrease the amount of metal required to maintain industry standard pressure performance, as compared to similar ends that did not have a conventional anti-peaking bead. I agree that one of ordinary skill in the art of can end design and/or manufacture would view those as the function of and result of using the conventional anti-peaking bead.

Mr. Gillest then went on to argue that there was no infringement under the doctrine of equivalents based only on his analysis of the way prong of the test.

Although both parties' experts agreed that the function of the annular reinforcing bead was to increase the pressure resistance of a sealed-on can end, Rexam suggested there were two additional functions in its brief in support of its motion for summary judgment. Rexam argued that the claimed bead also performed the functions of (1) supporting the central panel of the can, and (2) providing an opening into which a seaming chuck can enter from above.

Crown addressed these new arguments in its opposition brief by simply stating that "the declaration of Crown's expert, Mr. Higham, confirms that there is a genuine issue of material fact as to infringement by equivalents that precludes summary judgment." Crown did not provide a detailed argument or present additional evidence in response to these newly alleged functions, but instead referenced its expert report and asserted that Mr. Higham's evidence of equivalence precludes summary judgment of noninfringement.[9]

---

[9] On appeal, Crown attempted to argue the merits of Rexam's two functions. Because these arguments were not raised below, we will not consider them

Based on Rexam's arguments regarding the two additional functions, the district court granted summary judgment stating:

> Crown neither counters Rexam's evidence concerning the functions of supporting the central panel and providing an opening from above which a seaming chuck enters nor makes an argument that these are not key functions of the annular reinforcing bead. Moreover, Higham's report does not address these functions. Because there is no evidence creating a genuine issue of material fact on these points, Rexam is entitled to summary judgment that the fold of the Rexam End does not meet the annular reinforcing bead limitation of claim 14 of the '826 patent under the doctrine of equivalents.

First, we note that Rexam offered only attorney argument as to these two additional functions of the annular reinforcing bead, but no actual evidence. Rexam's own expert discussed only the single function of increasing the pressure resistance of a seamed-on can end. Second, we interpret Crown's response, which pointed to its expert report, as sufficient to create a material issue of fact. Crown's evidence, that the annular reinforcing bead has only one function, is in direct contrast with Rexam's view that the annular reinforcing bead performs multiple functions. Crown's expert reviewed claim 14 in light of the specification and as one of ordinary skill in the art concluded that the annular reinforcing bead performed only one function. It is not the case that Crown failed to respond to an argument or even that it failed to respond with any evidence. While Crown could have made this clearer to the district court by addressing the issue squarely or restating Mr. Higham's analysis, its decision to refer to the evidence already before the court should not be fatal. Crown's expert's opinion was part of the record— as was Rexam's expert's opinion.

in this appeal. See Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("With a few notable exceptions, such as some jurisdictional matters, appellate courts do not consider a party's new theories, lodged first on appeal.").

Because Crown provided evidence in support of its position that the annular reinforcing bead of claim 14 of the '826 patent had only one function, and because we must resolve any reasonable factual inferences in favor of the nonmoving party, we conclude that there is a material issue of fact regarding the function of the claimed bead. Accordingly, we reverse and remand the district court's grant of summary judgment of noninfringement.

II. Marking under 35 U.S.C. § 287(a)

Rexam cross-appeals the district court's grant of Crown's motion for summary judgment dismissing Rexam's counterclaim for infringement of the '839 patent due to Rexam's failure to mark. See Crown I. In particular, Rexam argues that failure to mark the "necking" machines sold by its licensee does not implicate § 287 because it is asserting only the method claims from the '839 patent, not the machine claims.

Prior to seaming a can end to a can body, the diameter of the top of the can body is typically reduced via a process known as "necking." The '839 patent claims a smooth die necking process that uses dies of successively decreasing internal diameter to reduce the diameter of the top of a can body. The machines used to perform the necking process are referred to as "neckers." Crown purchased twenty-six neckers from Belvac Production Machinery (Belvac) between 1993 and 1999. These neckers are capable of performing the claimed necking method as well as noninfringing necking methods depending on how they are configured. Belvac was licensed by Rexam to make neckers, but was required under the license to notify its customers that they would require a separate license from Rexam to perform the smooth die necking method claimed in the '839 patent. Rexam alleges that Crown used the neckers to

make over 17 billion cans per year using the patented method without obtaining a license. The parties agree that Rexam did not require Belvac to mark the neckers it produced and that Belvac, in fact, did not mark the neckers.

The marking statute, 35 U.S.C. § 287(a), requires that:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

Accordingly, a party that does not mark a patented article is not entitled to damages for infringement prior to actual notice. Although Rexam asserted only the method claims of the '839 patent against Crown, the district court dismissed Rexam's counterclaim because the '839 patent also includes unasserted apparatus claims. The district court erred.

The law is clear that the notice provisions of § 287 do not apply where the patent is directed to a process or method. Bandag, Inc. v. Gerrard Tire Co., 704 F.2d 1578, 1581 (Fed. Cir. 1983). In Hanson, 718 F.2d at 1082–83, we held that 35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims. Hanson is factually identical to this case, and we are therefore bound by the rule of Hanson.

In American Medical Systems, Inc. v. Medical Engineering Corp., 6 F.3d 1523 (Fed. Cir. 1993), we explained:

> The purpose behind the marking statute is to encourage the patentee to give notice to the public of the patent. The reason that the marking statute does not apply to method claims is that, ordinarily, where the patent claims are directed to only a method or process there is nothing to mark. Where the patent contains both apparatus and method claims, however, to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a).

Id. at 1538–39. As the American Medical opinion goes on to explain:

> In this case, both apparatus and method claims of the '765 patent were asserted and there was a physical device produced by the claimed method that was capable of being marked. Therefore, we conclude that AMS was required to mark its product pursuant to section 287(a) in order to recover damages under its method claims prior to actual or constructive notice being given to MEC.

Id. at 1539 (emphasis added). In this case and Hanson, the patentee only asserted method claims despite the fact that the patent contained both method and apparatus claims. In American Medical, in contrast, "both apparatus and method claims of the '765 patent were asserted." American Medical, 6 F.3d at 1523. Because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply. Consequently, we reverse the district court's grant of Crown's motion for summary judgment dismissing Rexam's counterclaim for infringement of the '839 patent.

CONCLUSION

Because there are material issues of fact regarding the function of the annular reinforcing bead, we reverse and remand the district court's grant of Rexam's motion for summary judgment of noninfringement of claim 14 of the '826 patent. We also reverse

and <u>remand</u> the district court's grant of Crown's motion for summary judgment dismissing Rexam's counterclaim for infringement of the '839 patent as Rexam was not required to mark apparatuses used to perform its claimed method.

<u>REVERSED AND REMANDED</u>

COSTS

No costs.