# United States Court of Appeals for the Federal Circuit

---

**DEERE & COMPANY,**
*Plaintiff-Appellant,*

v.

**BUSH HOG, LLC,**
*Defendant-Cross Appellant,*

AND

**GREAT PLAINS MANUFACTURING INCORPORATED,**
*Defendant-Cross Appellant.*

---

2011-1629, -1630, -1631

---

Appeal from the United States District Court for the Southern District of Iowa in Case No. 09-CV-0095, Senior Judge Charles R. Wolle.

---

Decided: December 4, 2012

---

RODERICK R. MCKELVIE, Covington & Burling LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief was R. JASON FOWLER.

CRAIG C. MARTIN, Jenner & Block LLP, of Chicago, Illinois, argued for defendant-cross appellant Bush Hog,

LLC. With him on the brief were STEVEN R. TRYBUS, of Chicago, Illinois, MATTHEW S. HELLMAN, of Washington, DC, and ELIZABETH A. EDMONDSON, of New York, New York. Of counsel were JEFFREY D. HARTY and EDMUND J. SEASE, McKee, Voorhees & Sease, P.L.C., of Des Moines, Iowa.

SCOTT R. BROWN, Hovey Williams LLP, of Overland Park, Kansas, argued for defendant-cross appellant Great Plains Manufacturing Incorporated. With him on the brief was MATTHEW B. WALTERS.

---

Before RADER, *Chief Judge*, NEWMAN and PLAGER, *Circuit Judges.*

RADER, *Chief Judge.*

The United States District Court for the Southern District of Iowa construed the terms of Deere & Co.'s ("Deere") U.S. Patent No. 6,052,980 (the "'980 Patent") and granted Bush Hog, LLC's ("Bush Hog") and Great Plains Manufacturing, Inc.'s ("Great Plains") motions for summary judgment of noninfringement. This court affirms the construction of "rotary cutter deck" and the determination that the terms "substantially planar" and "easily washed off" do not render the asserted claims invalid under 35 U.S.C. § 112. Because the district erroneously construed the term "into engagement with" to require direct contact, this court vacates that construction, reverses the grant of summary judgment, and remands for further proceedings.

## I.

The '980 Patent discloses an "easy clean dual wall deck" for a rotary cutter. Bush Hog and Great Plains (collectively, "Defendants"), manufacture rotary cutters

that are pulled behind a tractor and used to mow wide swaths of ground. The accused rotary cutters can "rough cut" fields after a harvest or clear weeds and brush along roadsides. The '980 Patent addresses a problem encountered by rotary cutters: "[d]uring cutting/shredding of material, such as cotton[,] corn, milo and wheat stubble, grass, etc. with a rotary cutter, debris accumulates on the top of the cutter deck. If not regularly cleaned off, the debris retains moisture which eventually results in the deck rusting out." '980 Patent, col. 1, ll. 21–25.

The specification explains that prior art rotary cutters had structural components such as gearboxes and deck bracings mounted either on top of or underneath the cutter deck. *Id.* col. 1, ll. 25–35. When placed on top of the deck, these components create traps for debris and water, making it difficult to clean the deck. *Id.* When placed underneath the deck, the structural components interfere with the flow of cut material, reducing cutting efficiency. *Id.*

The '980 Patent discloses a dual-wall deck that encloses the structural components in a torsionally-strong box. This leaves smooth surfaces on the top and bottom of the deck. Figure 3 of the '980 Patent shows a side view of the claimed dual-wall deck. In the embodiment shown, the front and rear of the upper deck wall **56** slope down to contact the lower deck wall **28**. *Id.* col. 2, l. 59 – col. 3, l. 4.



'980 Patent, fig. 3 (highlighting added).

Claim 1 of the '980 Patent recites:

1. A rotary cutter deck comprising:

>  a lower, substantially planar, horizontal deck wall;

>  an upper deck wall including a central portion elevated above said lower deck wall, and

>  front and rear portions respectively sloped downwardly and forwardly, and downwardly and rearwardly from said central portion **into engagement with, and being secured to**, said lower deck wall;

>  and right- and left-hand end wall structures respectively being joined to right- and left-hand ends of said lower and upper deck walls to thereby define a box section having torsional stiffness.

*Id.* col. 4, ll. 44–53 (emphasis added).

The district court construed the term "into engagement with" to mean "brought into contact with," and construed "being secured to" as "fastened or attached." *Deere & Co. v. Bush Hog LLC* ("*Claim Construction Order*"), No. 3:09-cv-95 (S.D. Iowa Jan. 25, 2011). The district court granted summary judgment of noninfringement, holding Deere did not raise a genuine issue of material fact as to literal infringement because "the upper deck walls do not come into contact with the lower deck walls in any of the accused products." *Deere & Co. v. Bush Hog LLC* ("*Summary Judgment Opinion*"), No. 3:09-cv-95, slip. op. at 13 (S.D. Iowa Aug. 1, 2011).

In each of the accused products, an intermediate structure connects the upper deck wall to the lower deck

wall at both the front and rear portions of the deck. *Id.* at 3. Like the district court, this court refers to those intermediate structures as "connectors." The size and shape of the connectors is different in the various accused products, but the district court did not distinguish between different types of connectors in granting summary judgment. The differences are therefore irrelevant to this appeal.

In addition to granting summary judgment of no literal infringement, the district court held Deere could not assert infringement under the doctrine of equivalents because doing so would vitiate the "into engagement with" limitation. *Id.* at 15–16. Further, the district court barred Deere from asserting equivalence because the "into engagement with" limitation "specifically excludes structures where the deck walls are not engaged with each other." *Id.* at 16.

The district court entered final judgment in favor of Defendants, dismissing without prejudice Defendants' counterclaims of invalidity. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## II.

This court reviews claim construction without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455–56 (Fed. Cir. 1998) (en banc). This court also reviews a district court's grant of summary judgment without deference. *ICU Med., Inc. v. Alaris Med. Sys. Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009).

The district court erroneously construed the term "into engagement with" to require direct contact between the upper and lower deck walls. At the outset, the claim language itself counsels against this narrow interpretation of the term. "[T]he words of a claim 'are generally

given their ordinary and customary meaning' . . . that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which [it] appears, but in the context of the entire patent, including the specification." *Id.* at 1313. While claim terms are understood in light of the specification, a claim construction must not import limitations from the specification into the claims. *Id.* at 1323.

Claim 1 of the '980 Patent requires the front and rear of the upper deck wall to slope downwardly "into engagement with, and being secured to," the lower deck wall. '908 Patent, col. 4, l. 49. To give effect to all terms of the claim, "secured to" and "into engagement with" must have distinct meanings. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). The parties agree that two objects may be "secured to" one another without being in direct contact. For example, a rigid bracket can "secure" two objects together yet maintain space between them. Defendants argue that if "engagement" also includes connection through indirect contact, then it is redundant with "secured to."

This court gives effect to the claim terms "secured to" and "engagement" as conveying distinct meanings. The term "engagement" connotes a connection between two objects in which the motion of one object is constrained by the other. This connection can be indirect, such as where a motor is engaged with a gear through a second, intermediate gear. The gear and motor are engaged even though they are not "secured" together, such as with nuts and bolts or by welding. Objects that are secured to one

another are not just connected, but are fastened or attached in some way. Thus, construing "engagement" to include indirect contact, consistent with its plain meaning, does not render the term superfluous.

The specification illustrates that "engagement" includes indirect contact between the upper and lower deck walls. As shown in Figure 1, the "[o]uter rear portions of the right- and left-hand upper deck wall sections **56** and **58** [yellow] are connected to the right- and left-hand lower deck wall portions [red] by respective downwardly and rearwardly inclined filler plates **86** and **88** [blue]." '980 Patent, col. 3, ll. 4–7 (highlighting added) (upper deck wall section **58** not labeled; filler plate **86** not shown). Thus, the filler plates provide an indirect connection by which the upper deck wall slopes "downwardly and rearwardly . . . into engagement with" the lower deck wall.



'980 Patent, Fig. 1 (highlighting added).

Defendants respond that the filler plates cannot be considered to bring the upper deck "into engagement with" the lower deck as contemplated by Claim 1, because they are located at a point where the upper deck is substantially horizontal. Claim 1 requires engagement at a

point where the upper deck "slope[s] downwardly" to meet the lower deck. *Id.* col. 4, ll. 45–50. However, the specification describes the portion of the upper deck wall where the filler plate is attached (labeled **64** in Figure 1) as "convexly bowed from front to rear." *Id.* col. 2, ll. 44–53. In other words, the upper deck wall is "sloped downwardly" at the point where it engages the lower deck wall via the filler plate.

Claim 1 indicates that the "engagement" between the upper and lower deck walls serves to impart "torsional stiffness" to the rotary cutter deck. *Id.* col. 4, ll. 44–53. The specification depicts this torsional stiffness in a way that does not require direct contact between the upper and lower deck walls. Specifically, the specification explains that upper and lower decks are "joined together to create a central box structure having good torsional strength." *Id.* col. 1, ll. 60–64. Elsewhere, the specification states that "the upper and lower deck walls . . . cooperate with each other, the filler plates, and [other structures] to form a box section having torsional rigidity." *Id.* col. 4, ll. 28–32.

The ordinary meanings of the terms that describe the relationship between the upper and lower deck walls— "cooperate," "join[ ]," "engage[ ]"—do not necessitate direct contact. Further, the filler plates, which indirectly connect the upper and lower deck walls, are expressly described as forming part of the torsionally-strong box structure. In other words, the specification contemplates the upper deck wall engaging the lower deck wall by way of the filler plates to achieve the desired torsional strength. Read in the context of the specification, Claim 1 allows for the upper deck wall to come "into engagement with" the lower deck wall through indirect contact.

The district court granted summary judgment of non-infringement because the upper and lower deck walls of the accused products do not directly contact one another. Because in the context of the '980 Patent "into engagement with" encompasses indirect contact, this court vacates the district court's construction of this term, reverses the grant of summary judgment, and remands for further proceedings.

## III.

The district court held Deere could not assert infringement under the doctrine of equivalents because the "into engagement with" limitation, as construed by the court, "is binary in nature"—either the upper deck wall is "in contact with the lower deck wall or it is not." *Summary Judgment Opinion*, slip. op. at 15 (internal quotation omitted). Further, the court held Deere's theory of equivalence was precluded by the doctrine of specific exclusion, "because the 'into engagement with' claim limitation specifically excludes structures where the deck walls are not engaged with each other." *Id.* at 16. Because the district court's analysis of this issue was based on its erroneous claim construction, this court also vacates the grant of summary judgment of no infringement under the doctrine of equivalents.

The district court's treatment of the doctrine of equivalents reveals a common misperception regarding "vitiation" that warrants some discussion. The concept of vitiation derives from the requirement that the doctrine of equivalents must be applied to the claims "on an element-by-element basis," so that every claimed element of the invention—or its equivalent—is present in the accused product. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). Of course, in every case applying the doctrine of equivalents, at least one claimed

element is not literally present in the accused product. The question is "whether an omitted part is supplied by an equivalent device or instrumentality." *Id.* at 32 (quoting *Hubbell v. United States*, 179 U.S. 77 (1900)). Thus, the doctrine of equivalents, by its very nature, assumes that some element is missing from the literal claim language but may be supplied by an equivalent substitute.

The test of the equivalence of a proposed substitute for a missing element is ordinarily a factual inquiry reserved for the finder of fact. *Warner-Jenkinson*, 520 U.S. at 38–39; *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997). It is the role of the court, however, to ensure that the doctrine of equivalents is not permitted to overtake the statutory function of the claims in defining the scope of the patentee's exclusive rights. *Sage*, 126 F.3d at 1424. Thus, for example, courts properly refuse to apply the doctrine of equivalents "where the accused device contain[s] the antithesis of the claimed structure." *Planet Bingo*, 472 F.3d at 1345. In such a case, application of the doctrine of equivalents would "vitiate" a claim element. *Warner-Jenkinson*, 520 U.S. at 39 n.8.

"Vitiation" is not an exception to the doctrine of equivalents, but instead a legal determination that "the evidence is such that no reasonable jury could determine two elements to be equivalent." *Id.* The proper inquiry for the court is to apply the doctrine of equivalents, asking whether an asserted equivalent represents an "insubstantial difference" from the claimed element, or "whether the substitute element matches the function, way, and result of the claimed element." *Id.* at 40. If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents. *Id.* at 39 n.8.

Courts should be cautious not to shortcut this inquiry by identifying a "binary" choice in which an element is either present or "not present." Stated otherwise, the vitiation test cannot be satisfied by simply noting that an element is missing from the claimed structure or process because the doctrine of equivalents, by definition, recognizes that an element is missing that must be supplied by the equivalent substitute. If mere observation of a missing element could satisfy the vitiation requirement, this "exception" would swallow the rule. And, the Supreme Court declined to let numerous contentions bury the doctrine. *Id.* at 21, 40. Thus, preserving the doctrine in its proper narrowed context requires a court to examine the fundamental question of whether there is a genuine factual issue that the accused device, while literally omitting a claim element, nonetheless incorporates an equivalent structure.

In this case, the district court construed "contact" to require "direct contact," and thus found that allowing "no direct contact" would vitiate the court's construction. Yet, a reasonable jury could find that a small spacer connecting the upper and lower deck walls represents an *insubstantial difference* from direct contact. *See TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1124 (Fed. Cir. 2001) (construing claim term "contact" to require "touching" but remanding question of whether "indirect contact" could be equivalent). Thus, the trial court erred by invoking the vitiation exclusion in this context.

This court has considered Defendants' other arguments against application of the doctrine of equivalents, but finds them unpersuasive. This court vacates the district court's determination that Deere is barred from asserting infringement under the doctrine of equivalents.

IV.

This court will take the opportunity to streamline this case by addressing the additional claim construction arguments raised in this appeal. *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1369 (Fed. Cir. 2012); *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1378 (Fed. Cir. 2011); *Riverwood Int'l Corp. v. R. A. Jones & Co.*, 324 F.3d 1346, 1357 (Fed. Cir. 2003) (addressing appellee's challenge to claim construction because judgment of invalidity in appellee's favor was vacated). The district court's claim constructions have been fully briefed on appeal and may become important on remand.

Deere appeals the construction of "rotary cutter deck," which the district court defined as "the blade housing on a power mower." *Claim Construction Order*, slip op. at 1. The district court rejected Deere's proposed construction, which would have excluded "consumer turf care equipment, self-powered mowers, self-propelled mowers or walk-behind mowers." *Id.* Deere seeks to exclude such consumer lawn mowers to limit the scope of prior art that may be asserted against the '980 Patent.

The term "rotary cutter deck" appears only in the preamble of the asserted claims, although it provides antecedent basis for "said deck" in Claim 5. As a preliminary matter, this court must determine whether the term is a limitation of the claims. Whether to treat a preamble as a limitation is "determined on the facts of each case in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history." *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.,* 98 F.3d 1563, 1572–73 (Fed. Cir. 1996). In general, a preamble is limiting if it is "'necessary to give life, meaning, and vitality' to the

claim." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) (quoting *Kropa v. Robie*, 187 F.2d 150, 152 (CCPA 1951)).

In *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808–09 (Fed. Cir. 2002), this court identified several guideposts to determine whether a preamble limits claim scope. Relevant here, "when reciting additional structure . . . underscored as important by the specification, the preamble may operate as a claim limitation." *Id.* at 808. Additionally, a preamble phrase that provides antecedent basis for a claim limitation generally limits the scope of the claim. *Id.* at 808; *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995). By contrast, if the body of the claim describes a structurally complete invention, a preamble is not limiting where it "merely gives a name" to the invention, extols its features or benefits, or describes a use for the invention. *Catalina*, 289 F.3d at 809.

The recitation of a "rotary cutter deck" in Claim 1 is necessary to understand the subject matter encompassed by the claim, which otherwise generally recites deck walls that "define a box section having torsional stiffness." '980 Patent, col. 4, ll. 44–53. Unlike non-limiting preamble terms, "rotary cutter deck" does not merely state a name or a use for the claimed box section. Rather, the term describes a "fundamental characteristic of the claimed invention" that informs one of skill in the art as to the structure required by the claim. *Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004). For example, that the claim is drawn to a "rotary cutter deck" informs the meaning of the "torsional stiffness" limitation—the claimed structure must possess sufficient stiffness to withstand the torsional loads imposed by the operation of a rotary cutter.

The specification further demonstrates that the pre-amble phrase "rotary cutter deck" is a limitation. The specification repeatedly refers to the "present invention" as "an improved deck for a rotary cutter," or a "rotary cutter deck." '980 Patent, col. 1, ll. 19–55. The title of the patent, the summary of the invention, and every drawing describe the invention as a deck for a rotary cutter. *See Poly-Am.*, 383 F.3d at 1310. The specification explains that the invention addresses a concern specific to rotary cutters: the need for a cutter deck that is smooth and easy to clean, but does not reduce cutting efficiency. '980 Patent, col. 1, ll. 19–35. In sum, the specification under-scores the importance of "rotary cutter deck" as a limita-tion of the claimed invention.

Recognizing that the term is a claim limitation, this court affirms the district court's construction of "rotary cutter deck" as "the blade housing on a power mower." The specification gives no indication that the patentee intended to exclude "consumer turf care equipment, self-powered mowers, self-propelled mowers or walk-behind mowers" from the definition of "rotary cutter" as Deere now seeks. The specification describes cutting grass with a rotary cutter, *id.* col. 1, ll. 21–23, and explains that while the disclosed embodiment shows a large rotary cutter that supports three mower spindles, the dual wall deck can also be made for a smaller "single spindle" device, *id.* col. 4, ll. 39–42. Although the disclosed em-bodiment has hitch supports and mounting holes that permit it to be attached or mounted to a tractor, *id.* col. 3, ll. 50–52, those structures are not required by every asserted claim, *see id.* col. 4, ll. 44–67. The specification does not limit the term rotary cutter to a device that is mounted to a tractor, and this court will not import limi-tations from the sole embodiment described in the specifi-

cation. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc).

Moreover, during prosecution, the examiner rejected claims as anticipated or obvious over prior art mower decks that would be excluded from Deere's proposed construction. Deere did not argue that the cited references did not disclose a "rotary cutter deck" or should be considered non-analogous art. The prosecution history thus provides no evidence of the clear and unmistakable disclaimer required to limit the ordinary meaning of the term "rotary cutter deck."

Defendants cross-appeal the district court's determination that the "substantially planar" limitation of Claim 1 and the "easily . . . washed off" limitation of Claim 6 do not render the claims invalid under 35 U.S.C. § 112 ¶ 2. *See Claim Construction Order*, slip. op. at 2. A claim is invalid as indefinite only where it is "not amenable to construction" or is "insolubly ambiguous." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). Because the disputed terms do not render the claims indefinite, this court affirms.

The district court did not interpret "substantially planar," finding the plain meaning sufficient. *Claim Construction Order*, slip. op. at 1. Defendants assert the term is insolubly ambiguous in the context of the '980 Patent because the claims and the specification do not explain the term, and statements in the prosecution history contradict its plain meaning. During prosecution, Deere added the "substantially planar" language to distinguish its claimed rotary cutter deck from one disclosed in U.S. Patent No. 4,724,660 ("Bowie"). Bowie discloses a dual deck wall with the cross-section shown in Figure 9 below. The lower deck is highlighted in yellow.



Bowie, fig. 9 (highlighting added).

This court has repeatedly confirmed that relative terms such as "substantially" do not render patent claims so unclear as to prevent a person of skill in the art from ascertaining the scope of the claim. *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001); *Andrew Corp. v. Gabriel Elecs. Inc.*, 847 F.2d 819, 821 (Fed. Cir. 1988) ("The criticized words ['approach each other,' 'close to,' 'substantially equal,' and 'closely approximate'] are ubiquitous in patent claims. Such usages, when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention, and to distinguish the claimed subject matter from the prior art, have been accepted in patent examination and upheld by the courts.").

This court does not agree with Defendants that the lower deck wall of Bowie is necessarily within the ordinary meaning of "substantially planar." Bowie's lower deck wall significantly deviates from planarity, both at the central peak **112** and the depressions at each outer side **117**, **123**. There is ample room to design lower deck walls that are more planar than that disclosed by Bowie. Thus, the prosecution history does not render "substantially planar" nonsensical in the context of the '980 Pat-

ent. To the contrary, the distinction that the lower deck wall of Bowie is not substantially planar assists the person of ordinary skill in the art in determining the scope of the claims. Because "substantially planar" reasonably describes the claimed subject matter to one skilled in the art, it does not render Claim 1 indefinite.

The district court did not interpret any language of Claim 6, and found its terms not ambiguous. Claim 6 recites:

> The rotary cutter deck defined in claim 1 wherein said lower and upper deck walls cooperate to present an upwardly facing deck surface which is **smooth and substantially obstruction free** from front to back, **whereby material may slide or easily be washed off** said deck surface, and water will run off said deck surface.

'980 Patent, col. 5, ll. 5–10 (emphases added).

On appeal, Defendants argue that the subjective term "easily" renders Claim 6 indefinite. The specification and prosecution history, however, provide several physical characteristics that guide the determination of whether a deck is "easily . . . washed off" within the meaning of Claim 6. The specification explains that an easily cleaned deck has "an upper, generally convex smooth surface from which debris tends to slide off and water will run off." '980 Patent, col. 1, ll. 40–46. Deere reinforced this requirement during prosecution, explaining it is "important" that the front and rear portions of the upper deck be sloped downwardly from the central section to aid the shedding of water and debris. Response to Office Action dated Aug. 23, 1999 in U.S. App. No. 09/118,591, at 3. Thus, consistent with the language of Claim 6, the intrinsic evidence explains that a deck with a smooth, generally convex upper surface is "easily" washed off.

Moreover, the specification explains that upper decks that "can be cleaned of debris quite easily and efficiently" were known in the prior art. '980 Patent, col. 1, ll. 29–31. The availability of known easy-clean decks provides a standard for measuring the scope of Claim 6. *See Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1367 (Fed. Cir. 2010); *Datamize*, 417 F.3d at 1351. Contrary to Defendants' arguments, the '980 Patent does not require the deck to be *more easily* cleaned than prior art decks. Rather, the invention is distinguished from prior art easy-clean decks because it avoids mounting equipment underneath the deck in a manner that reduces cutting efficiency. *Id.* col. 1, ll. 29–35 & ll. 40–42. This court affirms the district court's conclusion that Claim 6 is not rendered indefinite by the relative term "easily . . . washed off."

## V.

This court affirms the district court's construction of "rotary cutter deck" and its determination that "substantially planar" and "easily . . . washed off" do not render the claims indefinite under 35 U.S.C. § 112. Because the district court erred by construing "into engagement with" to require direct contact, this court vacates that construction, reverses the grant of summary judgment of noninfringement, and remands for further proceedings.

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART AND REMANDED.**