# United States Court of Appeals for the Federal Circuit

---

**THE CHARLES MACHINE WORKS, INC.,**
*Plaintiff-Appellant,*

v.

**VERMEER MANUFACTURING COMPANY,**
*Defendant-Appellee.*

---

2012-1578

---

Appeal from the United States District Court for the Southern District of Iowa in No. 11-CV-0507, Senior Judge Charles R. Wolle.

---

Decided: July 26, 2013

---

ROBERT D. TOMLINSON, Tomlinson Rust McKinstry Grable, of Oklahoma City, Oklahoma, argued for plaintiff-appellant. With him on the brief were LAWRENCE F. GRABLE and GARY PETERSON. Of counsel on the brief were EDMUND J. SEASE and JEFFREY D. HARTY, McKee, Voorhees & Sease, P.L.C., of Des Moines, Iowa.

RACHEL K. ZIMMERMAN, Merchant & Gould P.C., of Minneapolis, Minnesota, argued for defendant-appellee. With her on the brief was AARON M. JOHNSON.

---

Before DYK, MAYER, and MOORE, *Circuit Judges.*

MOORE, *Circuit Judge.*

The Charles Machine Works, Inc. (CMW) appeals from the district court's grant of summary judgment that Vermeer Manufacturing Company's (Vermeer) accused commercial products and non-commercial prototypes do not infringe, literally or under the doctrine of equivalents. CMW also challenges whether the prototypes were properly within the scope of summary judgment. We hold that CMW did not have sufficient notice that the prototypes were within the scope of the summary judgment decision, and thus *vacate-in-part* and *remand.* Regarding the accused commercial products, we *affirm* that there is no literal infringement, and *reverse* that there is no infringement under the doctrine of equivalents and *remand.*

BACKGROUND

U.S. Patent 5,490,569 ('569 patent) generally relates to a two-pipe drill for boring underground holes in the horizontal direction. An inner pipe rotates the drill bit. An outer pipe, which includes a body and casing, is used for steering. The '569 patent also discusses a structure called a "deflection shoe" as a steering mechanism. '569 patent, col. 3 ll. 23–28; Fig. 1. The deflection shoe is included on one side of the casing to create an asymmetry about the casing's centerline axis. *Id.* If the casing does not rotate, the deflection shoe causes the drill to deflect away from a straight path. *Id.* When the casing rotates, however, the drill follows a straight horizontal path. *Id.* at col. 3 ll. 31–44.

CMW sued Vermeer for infringement of the '569 patent. Asserted apparatus claims 1, 4–8, 10, 12, 18, 20–25, and 27 recite "a deflection shoe mounted on a first side of" either "the body" or "the casing." Asserted method claims 30–31 recite "the casing having a deflection shoe thereon."

CMW alleged infringement by two types of Vermeer drills: non-commercial prototypes and commercial products. Both types of drills include a structure called a bent sub, which CMW contends meets the "deflection shoe" and "mounted on" limitations. The prototypes include an additional structure called a wear pad. Vermeer moved for summary judgment of noninfringement, literal or under the doctrine of equivalents, of the asserted claims. The district court granted Vermeer's motion as to all accused products. CMW appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I.

We review a grant of summary judgment under the law of the regional circuit. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012). The Eighth Circuit reviews a grant of summary judgment *de novo*. *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Claim construction is an issue of law that we review *de novo*. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454–55 (Fed. Cir. 1998) (en banc). Infringement is a question of fact. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009). "Thus, on appeal from a grant of summary judgment of noninfringement, we must determine whether, after resolving reasonable factual inferences in favor of the patentee, the district court correctly concluded that no reasonable jury could find infringement." *Id.* (internal quotation omitted).

## II.

CMW argues that the court erred by granting summary judgment as to Vermeer's accused prototypes. It argues that Vermeer's motion for summary judgment covered only the accused commercial products. CMW also argues that it did not have notice that the court was considering the prototypes, which CMW argues are structurally different than the commercial products.

Vermeer responds that, both in its proposed final rulings and at the summary judgment hearing, it argued that none of the "accused products"—*i.e.*, prototypes and commercial models—meets the "deflection shoe" limitation. Vermeer also argues that, at the hearing, CMW made arguments about the wear pad structure that exists only in the prototypes.

We agree with CMW that it had insufficient notice that the summary judgment decision would include the prototypes for three reasons. First, Vermeer titled its own moving papers as a MOTION FOR SUMMARY JUDGMENT THAT VERMEER'S **COMMERCIAL** PRODUCTS DO NOT INFRINGE. J.A. 1625 (capitalization in original, emphasis added). Vermeer presented its arguments under the heading, "Vermeer's **Commercial** Products Cannot Infringe Because They Lack a Deflection Shoe Mounted on a Casing or Body." J.A. 1648 (emphasis added). Nowhere in its motion did Vermeer make substantive arguments about the prototypes.

Second, Vermeer's proposed final rulings were again expressly limited to the commercial products. Vermeer's heading was titled GRANT SUMMARY JUDGMENT THAT VERMEER'S COMMERCIAL PRODUCT DOES NOT INFRINGE THE ASSERTED CLAIMS . . . OF THE '569 PATENT. J.A. 3753 (capitalization in original). On appeal, Vermeer emphasizes its proposal that, "[w]hen the term 'deflection shoe' is properly construed, Vermeer's accused products do not" infringe. J.A. 3754; *see also* J.A.

3756 (addressing "the two structures [*i.e.*, wear pad and bent sub elbow] CMW has identified as meeting the 'deflection shoe' limitation"). The term "accused products" could in a colloquial sense arguably include all of the accused products. Here, however, the proposed rulings were expressly limited to "COMMERCIAL" products. The internal use of "accused products" did not expand the motion beyond its own express limits.

Third, Vermeer explained at the summary judgment hearing that its motion was limited to the commercial products. It stated that "[counsel for CMW] is correct, it would not resolve CMW's claims as to those three proto-type units. I agree with that. And if [CMW] wanted to proceed with a trial on those three prototype units . . . that's not what this motion is about." J.A. 3904–05. Vermeer went on to explain that its motion was "limited to the commercial product. It would not end CMW's claims if it chose to proceed on them as to three prototype units that were never sold. That would be up to CMW whether it wanted to do that." J.A. 3905. The court called the latter a "good clarification" about the scope of summary judgment. *Id.*

CMW's statements at the hearing did not indicate that the prototypes were part of summary judgment. To the contrary, it stated that, "[the prototype model] is not the focus of this motion. And . . . even if this motion . . . on the commercial product is granted . . . we still have to go to trial on the prototype." J.A. 3898; *see also* J.A. 3855 ("The other boring machines that have been accused of infringement, whether you want to call them prototype, or not, are not going to be disposed of on this motion."). We thus hold that CMW had insufficient notice that the summary judgment decision would include the accused prototypes. Accordingly, we vacate the grant of summary judgment of no infringement by the prototypes.

## III.

The district court construed "deflection shoe" as a "structure that can be attached to the side of the body or casing and that can be positioned to deflect the boring apparatus from a linear path." *Charles Machine Works, Inc. v. Vermeer Mfg. Co.*, No. 4:11-cv-507 (S.D. Iowa June 21, 2012), ECF No. 211, at 4–5. It also construed "mounted on" as "attached to." *Id.* at 4. On appeal, the parties limit their arguments about literal infringement to the correctness of the court's construction. Because we see no error in that claim construction, we affirm the grant of summary judgment that the accused commercial products do not literally infringe the asserted claims.

Regarding infringement under the doctrine of equivalents, the court concluded that "[a] bent sub is plainly different from and not the equivalent of the 'deflection shoe.'" *Id.* at 8. It found that the record "does not establish that persons learned in the art would deem the bent sub and mounted [deflection] shoe interchangeable." *Id.*

CMW argues that the court erred by discounting the declaration of its employee-expert, which established genuine factual disputes about equivalence. Vermeer responds that the declaration was merely conclusory. It also argues that a finding of equivalence would read the "deflection shoe" and "mounted on" limitations out of the claims and is thus barred by the doctrine of claim vitiation.

Infringement under the doctrine of equivalents may be established by showing that "the substitute element matches the function, way, and result of the claimed element.'" *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (quoting *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)); *see also Crown Packaging*, 559 F.3d at 1312. Whether the substitute element (1) has substantially the same function as the recited element, (2) achieves that function in sub-

stantially the same way, and (3) achieves substantially the same result are questions of fact. *See Crown Packaging*, 559 F.3d at 1312; *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1313 (Fed. Cir. 2003).

Vitiation is "a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.'" *Deere*, 703 F.3d at 1356 (quoting *Warner-Jenkinson*, 520 U.S. at 39 n.8). "[S]aying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013).

CMW's expert declaration established genuine disputes about equivalence. The expert opined that "[t]he function of the claimed deflection shoe mounted to the body or casing is to deflect the drill bit from a linear path. The way in which it does this is to react with the side of the bore hole to cause the drill bit to deflect from the linear path, and the result achieved is deflection of the drill bit in a direction opposite the deflection shoe." J.A. 3395.

He then compared the accused bent sub to the claimed deflection shoe. He opined that both structures have the same function because "[as] for the elbow on the body of the accused product, it too performs the function of deflecting the drill bit from a linear path." *Id.* He also opined that both structures perform the function "in substantially the same way" because "[b]oth have at least a portion disposed outside the cutting circle of the drill bit to react with the side of the bore hole and cause the drill bit to deflect from a linear path." J.A. 3395–96. He then opined that both structures "achieve the same result of deflecting the drill bit in a direction opposite the deflec-

tion shoe." J.A. 3396. He added that "these structures would be interchangeable," and "could be considered substitutes." *Id.* Based on these opinions, he ultimately determined that any differences between the recited "deflection shoe" and bent sub elbow "are at most insubstantial." *Id.* For purposes of summary judgment, we must accept CMW's expert's factual assertions as true, and we hold that they raised genuine factual disputes material to the function-way-result inquiries.

We also conclude that the doctrine of claim vitiation does not bar CMW's application of the doctrine of equivalents. On summary judgment, the appropriate question for the court was whether no reasonable jury could find equivalence based on the record. *Deere*, 703 F.3d at 1356. Based on CMW's expert declaration, we hold that a reasonable jury could have found equivalence, and the court erred by making a contrary legal determination.

## CONCLUSION

As to the accused prototypes, we *vacate* the grant of summary judgment of no infringement, literally or under the doctrine of equivalents, and remand for further proceedings. As to the accused commercial products, we *affirm* the grant of summary judgment of no literal infringement, and *reverse* the grant of summary judgment of no infringement under the doctrine of equivalents and *remand* for further proceedings.

## COSTS

Costs are awarded to CMW.

**VACATED-IN-PART, AFFIRMED-IN-PART, REVERSED-IN-PART AND REMANDED**