NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

**CORUS REALTY HOLDINGS, INC.,**
*Plaintiff-Appellant*

**v.**

**ZILLOW GROUP, INC., ZILLOW, INC., TRULIA, LLC,**
*Defendants-Appellees*

2020-1775

Appeal from the United States District Court for the Western District of Washington in No. 2:18-cv-00847-JLR, Senior Judge James L. Robart.

Decided:  June 29, 2021

JOSHUA HAMILTON LEE, Kilpatrick Townsend & Stockton LLP, Atlanta, GA, argued for plaintiff-appellant.  Also represented by VAIBHAV P. KADABA, MITCHELL G. STOCKWELL; KASEY KOBALLA, Raleigh, NC; DARIO ALEXANDER MACHLEIDT, Seattle, WA.

RAMSEY M. AL-SALAM, Perkins Coie, LLP, Seattle, WA, argued for defendants-appellees.  Also represented by CHRISTOPHER MARTH, CHRISTINA JORDAN MCCULLOUGH.

———————————

Before PROST\*, SCHALL, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Appellant appeals a decision of the United States District Court for the Western District of Washington granting Zillow Group, Inc.'s motion for summary judgment that Zillow did not infringe Appellant's patent. Corus claims that the district court erred in granting summary judgment of noninfringement based on incorrect claim constructions and that the court erred in striking portions of its expert witness report. We affirm.

## BACKGROUND

U.S. Patent No. 6,636,803 (the "'803 patent"),[1] entitled "Real-Estate Information Search and Retrieval System," generally describes "a system and method which uses digital technology to acquire and then present, in integrated form, information relating to one or more properties in a real estate market." '803 patent col. 4 ll. 4–6. The system generates a map on a digital device, such as a cell phone or computer, of an area of the user's interest and displays property icons and real estate information from sources such as a multiple listing service ("MLS") to inform real-estate agents and property buyers of offers for sale, lease, or rent. *See* J.A. 5 (citing '803 patent col. 4 ll. 7–12). According to the patent, this map can be generated on a "data

———————————

\*     Circuit Judge Sharon Prost vacated the position of Chief Judge on May 22, 2021.

[1]     Some of the '803 patent claims were amended in reexamination on January 21, 2015. Due to the amendments, the patent is divided into two sections, referred to as B1 and C1. Section C1 contains the amended claims that are at issue in this litigation. The court cites B1 for the specification and C1 for the claims.

terminal," comprising a map generation unit, a storage unit, a processor, and a display and may be used as a tool by real-estate agents and property buyers. *See* '803 patent col. 4 ll. 12–25; col. 8 ll. 45–59. The map generation unit generates a map in an area of interest; the storage unit stores into its own database property information derived from an MLS database. *Id.* at col. 2 ll. 42–50. "The processor implements management software which integrates the property information with the digital map," which "includes the display of icons which correspond to properties available in the map," which may be "selectable by the user," and which provides real estate information about that property from the MLS or other sources. *Id.* at col. 2 ll. 50–55. In other words, when an icon is selected, "property information obtained from the storage unit is displayed in association with the map." *Id.* at col. 2 ll. 55–57.

The '803 patent discloses two preferred embodiments. In the first embodiment, user input determines the map and the data terminal is a stand-alone device. *Id.* at col. 4 ll. 31–35. In the second embodiment, location data determines the map, which means this embodiment is "not a stand-alone system but rather is a mobile terminal connected to a location-positioning system via a communications link." *Id.* at col. 8 ll. 45–50. More specifically, the second embodiment, in addition to the map generation unit, storage unit, processor, and display, also has a location data receiver that can specify the current position of the terminal in the digital map. *Id.* at col. 8 ll. 45–59. The mobile terminal of the second embodiment is also capable of connecting to a "remote storage device" such as "a remote server connected to a network such as the Internet, or a database." *Id.* at col. 10 ll. 1–6. This particular feature allows the mobile terminal to gather updated property information from sources like MLS. *Id.* at col. 10 ll. 1–16.

During prosecution of the '803 patent, the United States Patent and Trademark Office ("PTO") rejected Corus's patent application over the prior art reference Weise,

among others.  J.A. 9.  Corus distinguished its invention as an innovative way to store real estate information on a local database.  In doing so, Corus argued that under Weise, a user must access a remote system using the Internet to obtain property information, whereas "in the present invention, the property information is obtained from a data base stored on the mobile computing device."  J.A. 10.  The PTO allowed the patent upon this disclaimer.

In 2013, Corus Realty Holdings, Inc. ("Corus") accused Zillow Group, Inc., Zillow, Inc., Trulia, LLC (collectively, "Zillow") of infringing its '803 patent.  Zillow denied infringement stating that its property database is maintained on a remote server and not on the mobile device, as required by the '803 claims.  J.A. 786 ¶ 4.  Zillow also told Corus that the '803 patent was invalid in light of U.S. Patent No. 6,871,140 ("Florance").

Corus sought reexamination of the '803 patent in view of Florance.  The Florance reference is directed to "a system for creating a unified commercial real estate database" that, in relevant part, uses global satellite positioning ("GPS") and the Internet "to coordinate remote field research vehicles equipped with GPS transponders, laptop computers, cellular communications, and laser measurement devices to provide precise and timely inventory of available buildings."  J.A. 10.

In light of Florance, Corus sought to amend its claims to require "cellular-based location data" as opposed to the original specification and claim which describe use of several different positioning systems.  *See, e.g.*, '803 patent col. 3 ll. 12–18 ("[T]he terminal is equipped with a receiver for acquiring location data from an external positioning system, which may be satellite-based, cellular-based, or any other type capable of tracking the position of an object in an area of interest.  Preferably, the receiver is a GPS receiver linked to the data terminal processor.").  The PTO ultimately rejected Corus's proposed amendments in light

of Florance and two other references not as issue in this appeal. J.A. 11.

Corus then sought to narrow its claims further by amending "capable of" to "configured to" in the limitation "data-enabled mobile phone configured to obtain cellular-based location data," and adding the new limitation "obtaining said area of interest from the cellular-based location data." *Id.* Corus successfully argued to the PTO that these changes distinguished the '803 patent from Florance.

In June 2018, Corus brought an infringement suit against Zillow alleging that various of its mobile applications, i.e., Zillow Real Estate, Trulia Real Estate, Zillow Rentals, Trulia Rentals, and HotPads (collectively, the "Zillow Apps") infringe claims 1–6, 8–10, 14–18, 20–23, 25–27, 30–31, and 33–38 of the '803 patent. All parties agree that the Zillow Apps request location data by "calling" to an operating system, either Apple's iOS or Google's Android. J.A. 13. Furthermore, the parties agree that the Zillow Apps request property information from Zillow's remote database, which requires an internet connection, that the retrieved results are stored in a device's working memory, and that the Zillow Apps can display a map with icons showing the property information received from the remote database. J.A. 13 (citing Zillow's Mot. for Summ. Judgment at 20–21; Corus's Resp. to Zillow's Mot. at 19–20). Corus and Zillow dispute how Apple and Google's location services utilize "cellular-based location data," but, because no discovery was taken from either company, the evidence in the record is "limited to the deposition testimony of Zillow witnesses, screenshots of Google and Apple web pages, and tests conducted by Corus's infringement expert, Dr. David Martin." J.A. 13–14.

During claim construction, the parties agreed that "database" should be construed as "a collection of data arranged for search and retrieval." J.A. 14. Following a *Markman* hearing, the court construed the disputed term

"cellular-based location data" to mean "location data from a cellular-based positioning system capable of tracking the position of a device in an area of interest." J.A. 14–15, 1059.

On October 30, 2019, Zillow moved to exclude several of Corus's infringement theories and portions of Dr. Martin's expert report that were untimely disclosed. ECF No. 58 at 1. The court granted the motion on January 30, 2020. ECF No. 114 at 24.

On February 18, 2020, the district court issued an order granting in part Zillow's motion for summary judgment of noninfringement. J.A. 1–49, ECF No. 138. The district court agreed with Zillow that "search," as stated within the construction of the "database" limitation, required that the user be capable of obtaining "new" property information and that for such "new" searches in Zillow's apps, "all searches in the apps rely on remote databases on the Internet." J.A. 2185; *see also* J.A. 21–22 (the district court opining that "the alleged functionality of the Zillow Apps does not meet the database limitations."). It was undisputed that using the Zillow Mobile Apps, property information is (i) obtained from Zillow's remote servers, (ii) placed in memory on the mobile device, and (iii) retrieved from memory and displayed to the user when a user clicks a property icon. J.A. 22. The district court found it relevant, however, that "a user cannot obtain *additional* property information without connecting back through the Internet to the remote database." *Id.* (emphasis added). Under this view, the district court found that "the 'retrieval' of property information from working memory [on the mobile device], where the application is not designed to obtain any new information except through internet access to a remote database does not mean that the working memory is a 'database'" for purposes of meeting the claim limitation. J.A. 23.

Corus appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

On appeal, Corus argues that the district court improperly granted Zillow's motion for summary judgment of noninfringement. This Court reviews a district court's decision to grant summary judgment under the law of the applicable regional circuit, here, the Ninth Circuit. *Ultimate-Pointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 824 (Fed. Cir. 2016). In the Ninth Circuit, a grant of summary judgment is reviewed de novo. *Id.* Infringement is a question of fact that this court reviews without deference on appeal from a decision granting summary judgment. *See Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1341–42 (Fed. Cir. 2014). This Court also reviews claim construction de novo. *Id.* at 1341.

I

A

Corus asserts that the district court erred in granting summary judgment because of certain claim construction irregularities as to two limitations: (1) "database," and (2) "cellular-based location data." Zillow first counters that the district court did not err in granting Zillow's motion for summary judgment because the Zillow Apps do not meet the "database" limitation.

As mentioned above, during claim construction the parties agreed that "database" should be construed as "a collection of data arranged for *search and retrieval*." J.A. 14, 252 (emphasis added). During prosecution of the '803 patent, the claims were rejected, in part, based on a prior art patent to Wiese. J.A. 2332–35. In response to that rejection, Corus narrowed the independent claims by requiring that property information be "obtained from a data base stored on the mobile computing device." J.A. 2350. Corus argued to the patent examiner that this amendment

8        CORUS REALTY HOLDINGS, INC. v. ZILLOW GROUP, INC.

distinguished the claimed invention from Wiese. The district court found the following disclaimer from the prosecution file history to be persuasive:

> . . . *Wiese teaches accessing a remote system to gather the sales information* needed to display symbols at the property locations on the map. . . . As shown in Fig. 1, a remote user using CPU 72 would have to go through ISP 44, Internet 32 and Server 30 to access value database 54. *In the present invention, the property information is obtained from a data base stored on the mobile computing device.*

J.A. 1079 (emphasis added).

In addition, Corus's own expert, Mr. Sturza, distinguished a prior art reference used in the reexamination to say that "retrieval" from a "cache" is not a "search." J.A. 24 (quoting Sturza deposition testimony).

The parties do not dispute the method by which the Zillow Apps retrieve property information. J.A. 22. The Zillow Apps do not infringe because all searches in the Apps rely on remote databases on the Internet which are downloaded to the local memory on the device and viewed by the user. *Id.* In order for a user to conduct another search (i.e., apply new filters or change the search region), a Zillow App user must connect back through the Internet to the remote database, an action which Corus disclaimed in prosecution, as correctly recognized by the district court. J.A. 10, 22. Therefore, Zillow's working memory of the devices is not arranged for "search and retrieval" as required to constitute a database. J.A. 22. For the Zillow Apps, results are downloaded and displayed from a remote server. Although the user may click on the property icon to see additional information, the results are not "searched." In other words, the Apps allow a view of already downloaded results. If a search of any kind needs to be conducted, it must be conducted in a remote database.

Corus contends that there is no requirement that further searching be done in response to new user input nor that the database needs additional information. Alternatively, Corus argues that the '803 patent describes further searching can be performed because a user can select an icon on the map which searches for and retrieves, within the storage unit's database, certain property information "in response to displayed icon selection[]." *See, e.g.*, '803 patent col. 5 ll. 46–47.

We are not persuaded. Even if the Zillow Apps can retrieve property information from the local memory on the mobile device if, for example, access to Zillow's remote servers is severed, as confirmed by a number of the parties' experts, J.A. 4861–62 (Oubraham); 4901 (Perrin); 1638 ¶ 60 (Martin), this does not mean that the Zillow Apps are performing a *search* as contemplated by the agreed upon construction of the database limitation. Instead, the record shows that all Zillow App "searches" are performed in a remote database. Accordingly, we affirm the district court's determination of noninfringement based on the "database" limitation.

B

The district court also held that the term "cellular-based location data" requires "that the location data must be obtained directly from requests to a cellular network," thereby precluding any claim coverage over a mixture of cellular and other location data. J.A. 27–29 citing J.A. 1094–95. The district court found that Corus had made several amendments disclaiming "fused" sources of location information and that such amendments created an "unambiguous disclaimer that the area of interest must be obtained from a cellular-based positioning system, and not merely incorporate cellular data in an unspecified manner." J.A. 30–31. The Court primarily focused on the following amendments made by Corus: (1) limiting the claims to "*cellular-based* location data," rather than "location

data," J.A. 30 (emphasis added), (2) narrowing "obtaining said area of interest, wherein said area of interest is user-designated or *corresponds to* the cellular-based location data," to "obtaining said area of interest *from* the cellular-based location data," J.A. 30 (emphasis in original), and (3) "*capable of* obtaining cellular-based location data" to "*configured to* obtain cellular-based location data," J.A. 31 (emphasis in original).

During claim construction, the court construed the term "cellular-based location data" as "location data from a cellular-based positioning system capable of tracking the position of a device in an area of interest." *See* J.A. 1059. The district court held Zillow was entitled to summary judgment because "the mere presence of cellular hardware, 'fused' location data, or the location of cell towers based on GPS data" did not suffice for purposes of finding infringement "because they do not constitute obtaining 'location information from a cellular-based positioning system capable of tracking.'" J.A. 28.

Corus argues that the district court, sua sponte, found that Corus disclaimed "crowd-sourced" "fused" sources of location information and that the claimed "area of interest" must be obtained "directly from requests to a cellular network" and "not merely incorporate cellular data in an unspecified manner." Corus asserts that the file history for the '803 patent demonstrates that none of the amendments or remarks made by Corus demonstrate a disclaimer of any and all "crowd-sourced" and "fused" sources of location information—i.e., "where some cellular data is combined with GPS, WiFi, and/or other forms of location data." Appellant's Br. 20; J.A. 29–30. Instead, Corus contends that any perceived disclaimer with respect to Florance was only meant to disclaim the use of GPS alone. Appellant's Reply Br. 13.

Corus amended "capable of obtaining cellular-based location data" to "configured to obtain cellular-based location data." In *Ball Aerosol & Specialty Container, Inc. v.*

*Limited Brands, Inc.*, 555 F.3d 984, 994–95 (Fed. Cir. 2009), this Court held that an accused product "reasonably capable of being put into the claimed configuration [was] insufficient for a finding of infringement," where the claim "specifie[d] a particular configuration." *See also* J.A. 30–31. We are not persuaded by Corus's argument that the amendments were not made to distinguish the invention from "crowd-sourced" or "fused" system, but rather to overcome the specific citation to the prior art that taught the use of GPS alone. The language of the amended claims appears to make the disclaimers found by the district court. In addition, an amendment is typically made to overcome an examiner's rejection. Corus unpersuasively argues it made its claim amendment at the examiner's suggestion rather than to overcome the obviousness rejection.

We therefore agree with the district court that Corus lacked evidence of the "cellular-based location data" limitation because the Zillow Apps do not themselves determine a user's location. Rather, they request location information from the operating system (Apple iOS or Google Android). J.A. 13, Appellee's Br. 43. And as the district court explained, even if the expert testimony cited by Corus regarding Apple and Google's location functionality (which the district court excluded) "was based on personal knowledge, it is not evidence that the Zillow Apps" meet the claim limitation because at most the testimony suggests that the Zillow Apps might utilize "fused" or "crowd-sourced" location data. J.A. 37–38. Accordingly, we affirm the district court's determination of noninfringement based on the "cellular-based location data" limitation.

II

This Court "review[s] evidentiary determinations under the law of the regional circuit." *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1161 n.6 (Fed. Cir. 2012) (citation omitted). The Ninth Circuit reviews such

evidentiary rulings for abuse of discretion. *See United States v. Childs*, 5 F.3d 1328, 1332 (9th Cir. 1993).

Corus did not include citations to Zillow's source code in its infringement contentions, but rather only identified the functionality within the accused apps that correspond to the "database" limitation. Corus states that Zillow created many obstacles to Corus's inspection of Zillow's source code. Notwithstanding those obstacles, the district court held that the Local Patent Rules required Corus to specifically identify in its infringement contentions all of Zillow's source code that supported its infringement theories. *See* J.A. 63–66. The district court stated "[i]n cases involving software allegations, the party asserting infringement has an obligation to 'promptly and appropriately' amend its contentions to identify pinpoint citations to source code after it has had an opportunity to review the code." J.A. 62.

Corus argues that the district court erred in rejecting parts of its expert's witness report. We disagree. First, the district court found that Dr. Martin's expert report included some source code, but because the report was submitted late, it prejudiced Zillow because it was served on Zillow after the district court's claim construction, during which the parties agreed to the construction of "database." J.A. 72–73.

Second, even if Mr. Martin's expert report would have shed some light on the alleged "database" for the Zillow Apps, the report was late, and the contentions were not supplemented to reflect Corus's new theory based on source code.[2] We conclude that the district court did not abuse its

---

[2]    Corus's infringement expert, Dr. Martin, presented evidence that search *results* could be downloaded to the mobile device and that a user, without Internet access, could still click on a property icon to retrieve that data (but could not conduct a new search). This "required database" theory

discretion in excluding Mr. Martin's testimony. Although Corus argues that the exclusion was an attack on the weight and credibility of the testimony, it was in fact a wholesale exclusion based on untimeliness. *See* J.A 15, 20–21. The local rule mandates supplementation of infringement contentions and solely submitting an untimely expert report containing such contentions cannot be sufficient. Accordingly, we conclude that the district court did not abuse its discretion in striking Dr. Martin's expert report.

## CONCLUSION

The Court has considered the parties remaining arguments but does not address them in light of its decision. Accordingly, the Court concludes that the district court did not err in granting Zillow's motion for summary judgment, nor did it abuse its discretion in striking portions of Dr. Martin's expert report.

## **AFFIRMED**

---

only suggests that the underlying data is arranged for "retrieval," not for "search" as it would be if it were in a "database." Zillow argues that on this basis, the retrieval of icon-related information is not based on a search of the database. Appellee's Br. 36.